6775

SANDERS v. ATLANTIC COAST LINE R. R. CO.

1. RAILROADS—NEGLIGENCE.—Evidence tending to show a car of stock was shipped to the wrong place and thereby delayed for two days in cold winter weather, and that they arrived badly bruised and stuffed up with cold, is some evidence of negligence.

2. DAMAGES.—Evidence of the value of a horse and his feed for one year is competent as elements of damage under the allegations of the complaint in this case.

Before KLUGH, J., Florence, March, 1907.    Affirmed.

Action by J. S. Sanders against Atlantic Coast Line Railroad Company.  From judgment for plaintiff, defendant appeals.

*Messrs. Willcox & Willcox* and *J. P. McNeill,* for appellant, cite:  *Delay must be shown to be proximate cause of damage:*  Moore on Cor., 248; 57 Am. D., 701; 71 Am. St. R., 542; 24 Stat., 671.

*Mr. W. F. Clayton,* contra.

February 27, 1908.    The opinion of the Court was delivered by

MR. JUSTICE GARY.    This is an action for damages alleged to have been sustained by the plaintiff, through the negligence of the defendant, in the transportation of live stock.

The complaint alleges:  "That plaintiff purchased at Atlanta, Ga., about February 1st, 1906, a car-load of live stock, twelve mules and ten horses, and ordered the same shipped to him at Florence, S. C.

"That upon notification by defendant that his stock had arrived, plaintiff proceeded to receive them, when he found that it was not the stock he had bought, and so notified the defendant, when it was discovered the wrong car of stock had been brought to Florence as plaintiff's stock.

"That some days thereafter plaintiff's car of stock arrived in bad condition, stuffed up from cold, from long exposure, thin, gaunt, and unfit to be placed upon the market, and one of the animals died within a few days after delivery.

"That the reason of defendant's negligence, in shipping plaintiff's car of stock to some other point other than the point to which billed, and the long exposure of plaintiff's stock, confined in winter in a car, caused one of plaintiff's animals to die, and made the others unfit for immediate sale, compelling plaintiff to feed, care for, nurse and medicine the

said car-load of stock, engendering loss and expense to plaintiff in the sum of two hundred and fifty dollars."

The defendant denied the allegations of the complaint, except its corporate existence.

The jury rendered a verdict in favor of the plaintiff for $125.00.

At the close of the testimony, the defendant's attorneys made a motion for a nonsuit, on the ground that there was no testimony tending to show negligence on the part of the defendant. The motion was refused, and this is assigned as error.

The plaintiff testified as follows: "Q. You shipped about twenty-two head? A. Yes, sir; loaded them on Thursday afternoon, about the first of February; loaded them myself. Q. Were you at any time notified by the defendant that your stock had arrived? A. Yes, sir. Q. Tell what you did. A. I went to the depot for my stock. It was on Friday afternoon, and Mr. Shepard insisted upon delivering me a lot of stock—in other words, Mr. Shepard wanted to deliver me somebody else's lot of stock. Q. It was not your lot that arrived? A. No, sir. Q. Did your lot ever arrive? A. Yes, sir. Q. How long afterwards? A. Sunday afternoon, afterwards. Q. What was their condition when they arrived? A. When the stock arrived they seemed to be in fair condition, when they arrived; but can't say it looked bad when it got here, except for many bruises on it, but I received the stock under protest, and in a few days afterwards it commenced to show up. Q. What commenced to show up? A. The horses. Q. Sick horses? A. Yes, sir. Q. How were they sick? A. Some had colds, and some had pneumonia. Mr. McNiel: If the stock was received in fair condition, as the witness stated—A. Seemingly so. Q. How soon after you unloaded the stock did you discover that they were stuffed with colds and pneumonia? A. Anywhere from one to five or ten days—anywhere along there. It takes time to develop these things. Q. And you say that one of them died? A. Yes, sir. How long after that did he die?

A. One died in about a week or ten days after that. Q. Well, now, Mr. Sanders, you have alleged that you have been damaged two hundred and fifty dollars by reason of this negligence of the railroad company; please state how you are damaged, if any. A. My stock should have been here Friday night. My stock went to somebody else and somebody else's stock came to me, and had to be transferred back again. Q. Well, that is all true, but you say that you have been damaged two hundred and fifty dollars? A. All men who have ever shipped horses know that it is very injurious to ship them, even for them to come straight through. After you ship and unload, and they go to some other point, the longer you keep it out on the road it is more apt—it is more subject to damage. Q. Was there any damage, due to standing up, by any of the other stock? A. Yes, sir; a good many of them got thin and poor and unfit for sale, and lost the fat."

There was other testimony to the effect that the stock when delivered at Florence appeared to be bunged up and full of cold. The car containing the plaintiff's stock was shipped to Brunson, a station on the C. & W. C. Railroad.

In the light of this testimony it can not be said that there was a total failure of evidence tending to show negligence.

The defendant's attorneys also made a motion for a new trial on the same grounds as were urged upon the motion for nonsuit.

The refusal to grant the motion is also assigned as error.

This question is disposed of by what was said in considering the question whether there was error in refusing the nonsuit.

The last exception is as follows: "His Honor erred, it is respectfully submitted, in ruling as competent, over defendant's objection, the testimony of the witness, S. H. Sanders, in estimating the damage sustained by alleged injury to a horse to be $200.00, as follows: 'Q. How much did you lose on the horse after keeping him a year? A. Lost $200.00 on him, counting a year's

feed;' whereas, he should have ruled such testimony to be incompetent, as showing the proper measure of damages."

The presiding judge properly ruled that the question was competent, as it was in response to the allegations of the complaint.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.